**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

In re: THE ROMAN CATHOLIC DIOCESE OF ALBANY, NEW YORK,

Debtor.

1:25-cv-01570 (BKS)

---

HARTFORD ACCIDENT AND INDEMNITY COMPANY and HARTFORD FIRE INSURANCE COMPANY,

Appellants,

v.

OFFICIAL COMMITTEE OF TORT CLAIMANTS,

Appellee.*

---

**Appearances:**

*For Appellants:*
James P. Ruggeri
Joshua D. Weinberg
Annettee P. Rolain
Anna Belle Reilly
Ruggeri Parks Weinberg LLP
1875 K Street NW, Suite 800
Washington, DC 20006

Christopher A. Priore
Wilson, Elser, Moskowitz, Edelman & Dicker
200 Great Oakes Boulevard, Suite 228
Albany, NY 12203

*For Appellee:*
Robert T. Kugler
Edwin H. Caldie
Stinson LLP
50 South Sixth Street, Suite 2600

---

* The Clerk of Court is respectfully directed to amend the caption to conform to the above.

Minneapolis, MN 55402

Timothy W. Burns
Jesse J. Bair
Burns Bair LLP
10 East Doty Street, Suite 600
Madison, WI 53703

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Appellants Hartford Accident and Indemnity Company and Hartford Fire Insurance Company (collectively, "Hartford") appeal from a September 3, 2025 order entered by United States Bankruptcy Judge Robert E. Littlefield, Jr., concluding that they lacked party-in-interest standing under 11 U.S.C. § 1109(b) to object to certain claims filed in these Chapter 11 proceedings. The Roman Catholic Diocese of Albany, New York filed for bankruptcy following numerous child sexual abuse lawsuits brought against it. Hartford, one of the Diocese's insurers, sought to object to certain claims related to that abuse. Appellee Official Committee of Tort Claimants argued, however, that Hartford was not a party in interest under § 1109(b) and therefore could not object. The bankruptcy court agreed with the Committee, and Hartford appealed. The appeal is fully briefed, and the Court heard oral argument on September 11, 2026. (Dkt. Nos. 14, 17, 37). For the reasons that follow, the order of the bankruptcy court is reversed, and the case is remanded for proceedings consistent with this decision.

## II. BACKGROUND

### A. Chapter 11 Bankruptcy

Bankruptcy provides those in "financial distress" an opportunity "to reorganize, discharge their debts, and maximize the property available to creditors." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 272 (2024). Relevant here, Chapter 11 of the Bankruptcy

Code "allows debtors and their creditors to negotiate a plan for dividing an estate's value." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 454 (2017); *see* 11 U.S.C. § 1101 *et seq.* Any reorganization plan is then subject to court approval, or "confirmation." *See generally* 11 U.S.C. § 1129; *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988). "Chapter 11 strikes 'a balance between a debtor's interest in reorganizing and restructuring its debts and the creditors' interest in maximizing the value of the bankruptcy estate.'" *Truck*, 602 U.S. at 272 (quoting *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 51 (2008)).

During the reorganization process, creditors "may file a proof of claim." *See* 11 U.S.C. § 501(a). The Code deems claims for which proof is filed "allowed"—in other words, "recoverable in bankruptcy," *In re LATAM Airlines Grp. S.A.*, 55 F.4th 377, 383 (2d Cir. 2022)—"unless a party in interest . . . objects." 11 U.S.C. § 502(a). "[I]f there are objections to the claim," the court must determine "whether those claims are 'allowed' under the Code." *See Hooper v. Crawford*, 184 F.4th 913, 918 (7th Cir. 2026). Ultimately, the plan "divides claims against the debtor into separate 'classes' and specifies the treatment each class will receive." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 641 (2012). "Classes with 'impaired' claims may vote to accept or reject the plan," which in turn affects confirmation. *See LATAM Airlines*, 55 F.4th at 383 (citing 11 U.S.C. §§ 1126, 1129(a)(8)); *see also RadLAX*, 566 U.S. at 641–42.

Section 1109(b) explains "which stakeholders can participate, and to what extent, in these reorganization proceedings." *Truck*, 602 U.S. at 272. It provides: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The statute's examples are

"illustrative but not exhaustive." *Truck*, 602 U.S. at 277. "Beyond this non-exhaustive list, the term 'party in interest' is not further defined in the statute." *In re Teligent, Inc.*, 640 F.3d 53, 60 (2d Cir. 2011). This appeal concerns whether Hartford possesses "a sufficient stake in [the] reorganization proceedings to be a 'party in interest'" permitted to object to claims under § 502(a). *See Truck*, 602 U.S. at 277.

**B. Facts and Procedural History[1]**

The debtor in the underlying bankruptcy proceedings is the Diocese, a not-for-profit corporation which oversees Catholic ministries in various upstate New York counties. (*See* Bankr. Dkt. No. 6, ¶ 7). Hartford is one of the Diocese's insurance providers. (*See* Bankr. Dkt. No. 2118, ¶ 3). The Committee is made up of seven sexual abuse survivors, all of whom have asserted claims against the Diocese; they also represent the interests of over 400 additional survivors with similar claims. (*See* Bankr. Dkt. No. 128, at 1; *see also* Dkt. No. 17, at 7).

Long before these proceedings, Hartford issued the Diocese a series of insurance policies. (*See* Bankr. Dkt. No. 2118, ¶ 3). Specifically, "Hartford issued general liability insurance policies to the Diocese" between April 1973 and September 1978, and "umbrella policies" between June 1972 and September 1978. (*Id.*). As Hartford explained below and the parties now agree, each of the relevant policies—"[s]ubject to slight variations in policy language"—"provides that Hartford will pay only for those sums 'which [the Diocese] shall become legally obligated to pay as damages because of bodily injury or property damage to which th[e] insurance applies, caused by an occurrence,' which must be an 'accident.'" (Bankr. Dkt. No. 2117, at 10 (quoting Bankr. Dkt. No. 2210-1, at 6, 48 (copy of policy in effect from 1973 to

[1] The facts, which are in relevant part undisputed, are drawn from the record before the bankruptcy court, *In re The Roman Catholic Diocese of Albany, New York*, Case No. 23-10244. *See In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 574 n.4 (S.D.N.Y. 2019).

1976)); *see also* Dkt. No. 14, at 12 (citing Bankr. Dkt. No. 2168, at 11–12; Bankr. Dkt. No. 2210-1); Dkt. No. 17, at 9). The copy of the representative policy provided to the bankruptcy court also contains a number of exclusions and other terms. (*See* Bankr. Dkt. No. 2210-1, at 48–49). In short, then, the policies bind Hartford to pay sums for which the Diocese is legally obligated to pay as damages, subject to their "terms, conditions, and exclusions." (Bankr. Dkt. No. 2168, at 11 (quoting Bankr. Dkt. No. 2145, at 19)).

Decades later, New York passed the Child Victims Act, which "among other things, extend[ed] the statutes of limitations and establish[ed] a revival window for civil and criminal cases involving sexual offenses against minors." *Parker v. Alexander*, 171 F.4th 146, 149 (2d Cir. 2026); (Bankr. Dkt. No. 6, ¶ 71). As a result, the Diocese faced hundreds of lawsuits from sexual abuse survivors. (*See* Bankr. Dkt. No. 6, ¶ 72). "Hartford agreed to participate in the defense of" roughly 115 of those lawsuits, "subject to a complete and full reservation of rights," as permitted under the policies and New York law. (Bankr. Dkt. No. 2118, ¶ 4; *see also* Dkt. No. 14, at 12 n.4 (citing Dkt. No. 2210-1, at 48)). Hartford also "made indemnity payments in connection with multiple settlements of abuse-related lawsuits." (Bankr. Dkt. No. 2118, ¶ 5).

In March 2023, the Diocese filed a Chapter 11 bankruptcy petition. (*See* Bankr. Dkt. No. 1). The bankruptcy court referred various parties—including the Committee, the Diocese, Hartford, and the Diocese's other insurers—to mediation. (*See* Bankr. Dkt. No. 640, at 1–7, 13). Among other things, the court ordered the mediating parties to "seek to resolve" any "disputes" related to the "[a]ssessment of claim credibility and the [Diocese's] potential legal liability for" any sexual abuse-related claims; "[i]nsurance coverage issues including any defenses or exceptions to coverage"; and the "[t]erms of a consensual chapter 11 plan of reorganization." (*Id.* at 2–3). Although mediation has yielded some progress—the Diocese and Committee have

"reached agreement on terms of a settlement that will lead to an agreed-upon plan," (Dkt. No. 37, at 21)—mediation remains ongoing, and no proposed reorganization plan has been filed. (*See* Dkt. No. 14, at 14; *see also* Dkt. No. 17, at 10).

Numerous sexual abuse victims have filed proofs of claims, some of which the Diocese tendered to Hartford for coverage. (*See* Bankr. Dkt. No. 2117-3, at 2–11). Since the Diocese filed its petition, Hartford has "participat[ed] in the defense of certain claims which the [Diocese] tendered to Hartford that have been allowed to proceed due to [a] modification of the automatic stay." (Bankr. Dkt. No. 2118, ¶ 5; *see also* Bankr. Dkt. Nos. 1545, 1547). Still, Hartford has not "waive[d] [its] coverage defenses and [agreed] to pay any and all claims that may be allowed." (*See* Bankr. Dkt. No. 2117, at 8; *see also* Dkt. No. 14, at 9–10). The Diocese brought an adversary proceeding seeking, among other things, a declaratory judgment that Hartford is obligated to provide insurance coverage for abuse claims the Diocese becomes obligated to pay. *See generally* Complaint, *The Roman Catholic Diocese of Albany, N.Y. v. Certain Underwriters at Lloyd's, London*, No. 23-90012-1 (Bankr. N.D.N.Y. Aug. 8, 2025), ECF No. 1. That proceeding remains pending.

Hartford sought to object to certain of the claims, arguing that they failed to meet the federal plausibility pleading standard.[2] (*See* Dkt. No. 26, at 452–490; *see also* Dkt. No. 27, at 1–27, 39–66, 78–180, 225–323). Under New York law, Hartford explained at oral argument, a claimant must establish negligence, which could be an "accident" under the policies; Hartford maintains that claims to which it sought to object failed to plausibly allege the Diocese's negligence. The Committee opposed Hartford's objections, (*see* Dkt. No. 27, at 368–73), and at a

[2] Hartford also filed accompanying motions to seal. (*See* Dkt. No. 27, at 28–38, 67–77, 181–224, 324–67). The bankruptcy court addressed these motions in tandem with Hartford's objections for purposes of the § 1109(b) analysis, and this Court does as well. (*See* Bankr. Dkt. No. 2168, at 5, 16; *see also* Bankr. Dkt. No. 2077, at 44–45).

subsequent hearing, the bankruptcy court raised—and the parties discussed—the issue of Hartford's § 1109(b) standing. (Bankr. Dkt. No. 2077, at 24–51).

After soliciting supplemental briefing, the bankruptcy court concluded that Hartford was not a party in interest under § 1109(b), and therefore lacked standing to object to the claims. (Bankr. Dkt. No. 2168, at 5–15). The court emphasized that Hartford had not conceded its liability for the claims under the policies' terms, no reorganization plan had been proposed, and the parties remained in mediation. (*Id.* at 8–9). Noting that nothing reflected that Hartford's "rights [were] in the crosshairs," the bankruptcy court reasoned that Hartford lacked a sufficient stake in the proceedings to object to the claims. (*See id.* at 8–15).

Hartford timely appealed. (*See* Bankr. Dkt. Nos. 2206, 2207).

## III. STANDARD OF REVIEW

District courts "have jurisdiction to hear appeals" from "final judgments, orders, and decrees" of a bankruptcy court.[3] 28 U.S.C. § 158(a)(1). "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *See Madoff Inv. Sec.*, 605 B.R. at 581 & n.8 (citation modified). The district court accepts "the bankruptcy court's findings of fact unless they are clearly erroneous," and reviews legal conclusions—including "the bankruptcy court's view of the principles governing" § 1109(b) standing—de novo. *See Teligent*, 640 F.3d at 57; *see also In re Refco, Inc.*, 505 F.3d 109, 116 (2d Cir. 2007).

[3] As the parties agree, the order here is final because it definitively resolved the issue of Hartford's standing to object to the claims and move to seal. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37 (2020) ("Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."). To be sure, the order recognizes that Hartford could in the future become a party in interest, in the event it waives coverage defenses, or if a future proposed plan puts Hartford's rights "in the crosshairs." (*See* Bankr. Dkt. 2168, at 8–15). But "the concept of finality . . . in bankruptcy matters is more flexible than in ordinary civil litigation," and any proposed reorganization plan would require "consideration of a new motion, which will be decided in light of different circumstances." *See In re Chateaugay Corp.*, 880 F.2d 1509, 1511, 1513 (2d Cir. 1989). Hartford's motion for leave to appeal is therefore denied as unnecessary.

## IV. DISCUSSION

### A. Appellate Standing

Two types of standing are at issue in this appeal: bankruptcy standing and bankruptcy appellate standing. Generally, to have bankruptcy standing, "a party must satisfy (1) Article III Constitutional standing; (2) federal court prudential standing; and (3) the party in interest standing under § 1109(b)." *In re Roman Cath. Diocese of Syracuse*, 665 B.R. 866, 875 (Bankr. N.D.N.Y. 2024) (citing *In re Motors Liquidation Co.*, 430 B.R. 65, 92 (S.D.N.Y. 2010)); *cf. Teligent*, 640 F.3d at 60 & n.3. The bankruptcy court order here addressed only § 1109(b) standing. (*See* Bankr. Dkt. No. 2168, at 5–16).

Bankruptcy appellate standing, however, is a distinct requirement. The Bankruptcy Code "prescribes no limits on standing beyond those implicit in Article III of the United States Constitution." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88 (2d Cir. 2011); *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013). But "for practical reasons," the Second Circuit has "adopted the general rule, loosely modeled on the former Bankruptcy Act, that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *DBSD N. Am., Inc.*, 634 F.3d at 88–89 (citation modified); *In re Salant Corp.*, 176 B.R. 131, 133 (S.D.N.Y. 1994). Inevitably, bankruptcy court orders "indirectly affect[]" a "myriad of parties." *In re Colony Hill Assocs.*, 111 F.3d 269, 273 (2d Cir. 1997) (quoting *Kane*, 843 F.2d at 642). The "person aggrieved" standard "reflects the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by" those parties. *Id.* (citation modified). Accordingly, bankruptcy appellants ordinarily "must establish, in addition to Article III standing, that the bankruptcy court's order caused [them] a 'direct' and 'financial'

injury."[4] *In re Dunne*, 684 F. App'x 85, 86 (2d Cir. 2017) (quoting *DBSD N. Am., Inc.*, 634 F.3d at 89).

This appeal is different from others involving the personal aggrieved standard, however. It challenges "the bankruptcy court's decision regarding bankruptcy standing," not the "substance" of Hartford's objections to the bankruptcy claims or its sealing motions. *See In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 209 n.23 (3d Cir. 2011) (en banc). Other circuits have held in similar circumstances that the ordinary person aggrieved standard "is not implicated." *See In re Kaiser Gypsum Co.*, 60 F.4th 73, 82 (4th Cir. 2023), *rev'd on other grounds*, 602 U.S. 268 (2024); *see also Glob. Indus. Techs.*, 645 F.3d at 209 n.23; *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012). This is so, those courts explain, because "[a] party denied standing in the bankruptcy court [necessarily] has appellate standing to challenge that determination." *See Thorpe*, 677 F.3d at 884 (citing *Glob. Indus. Techs.*, 645 F.3d at 209 n.23). To conclude otherwise—and subject such parties to the "more-exacting" person aggrieved standard—"would risk leaving parties in interest who have been erroneously denied bankruptcy standing, but who do not meet the more stringent requirements for appellate standing, without legal redress for that error." *Kaiser Gypsum Co.*, 60 F.4th at 82 (quoting *Glob. Indus. Techs.*, 645 F.3d at 209 n.23).

The Second Circuit does not appear to have addressed this distinction. But outside the bankruptcy context, it is uncontroversial that a party held to lack standing may appeal that determination. *See, e.g.*, *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (reviewing dismissal for lack of Article III standing); *Sjunde AP-Fonden v. Fed. Deposit Ins.*

---

[4] The alternative basis for appellate standing concerning "the public interest" is not at issue. *See In re Zarnel*, 619 F.3d 156, 161–62 (2d Cir. 2010); *DBSD N. Am., Inc.*, 634 F.3d at 89 n.3. Additionally, the Court assumes without deciding that *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), did not abrogate the person aggrieved standard, and that Hartford—even if properly analogous to a defendant in ordinary civil litigation—must still establish Article III standing. (*Contra* Dkt. No. 37, at 10–11, 12–13).

*Corp.*, --- F.4th ----, 2026 WL 2416170, at *5–7, 2026 U.S. App. LEXIS 24993, at *13–17 (2d Cir. Aug. 19, 2026) (same as to prudential standing); *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 71 (2d Cir. 2013) (same as to statutory standing). And allowing Hartford's appeal would not open the floodgates to "endless appeals" brought by parties "indirectly affected" by a bankruptcy court's ruling. *See Colony Hill Assocs.*, 111 F.3d at 273. The order appealed from, after all, directly concerned Hartford and its standing to object to the claims. So, consistent with the principles underlying the "person aggrieved" standard—and without any Second Circuit authority "counsel[ing] otherwise"—the Court will not "erect" an improper "barrier to redress."[5] *See Kaiser Gypsum Co.*, 60 F.4th at 82.

**B. Party in Interest Standing**

Hartford challenges the bankruptcy court's determination that it lacks party in interest standing under § 1109(b). "Section 1109(b) provides that 'a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.'" *Teligent*, 640 F.3d at 60 (alteration adopted) (quoting § 1109(b)). This list is "non-exhaustive," and the statute does not further define "party in interest," so "courts have long recognized that the meaning of the term "must be determined on an '*ad hoc*' basis." *Id.* (quoting *In re Johns-Manville Corp.*, 36 B.R. 743, 747 (Bankr. S.D.N.Y. 1984)); *see also Truck*, 602 U.S. at 277. "The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity to

[5] To the extent any further Article III standing analysis is required, the Court concludes that those requirements are met. *See, e.g.*, *In re Goebel*, 184 F.4th 59, 66 (2d Cir. 2026) (describing Article III standing requirements). Although the Committee also presents third-party standing arguments, it fails to explain how Hartford seeks "to assert the rights or interests of" any other party by appealing the bankruptcy court's determination that Hartford lacks § 1109(b) standing. *See In re Dynegy, Inc.*, 770 F.3d 1064, 1068 (2d Cir. 2014).

participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." *Teligent*, 640 F.3d at 60 (citation modified); *cf. Truck*, 602 U.S. at 277–78. Although "[t]he term 'party in interest' is broadly interpreted," it is "not infinitely expansive." *See S. Boulevard Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (Bankr. S.D.N.Y. 1997); *Truck*, 602 U.S. at 284.

Here, the bankruptcy court's decision focused largely on the Supreme Court's recent *Truck* decision, which considered an insurer's standing as a party in interest under § 1109(b).[6] *See Truck*, 602 U.S. at 277–82. So the Court begins by examining *Truck* and other relevant caselaw, before turning to the facts of this case.

### 1. *Truck*

*Truck* involved debtor companies that had sold products containing asbestos. 602 U.S. at 274. Faced with overwhelming asbestos lawsuits, the companies filed for Chapter 11 bankruptcy. *Id.* The eventual reorganization plan created a trust, and among other things, transferred to the trust all the debtors' rights under their insurance contracts, including rights to coverage and insurance proceeds. *Id.* The plan treated insured and uninsured claims differently: it imposed certain fraud-prevention disclosure requirements for uninsured claims submitted directly to the trust for resolution—including that claimants identify all other related claims—but no such requirements for insured claims filed in the tort system. *Id.* at 275. The insurer sought to object to the plan's confirmation, arguing in relevant part that the absence of disclosure requirements for

[6] The Committee notes that Hartford purported to make its objections "pursuant to its alleged 'party in interest' status under" § 502(a), not § 1109(b). (*See* Dkt. No. 17, at 33–34 & n.86). In any event, the bankruptcy court unequivocally relied on § 1109(b)'s "party in interest" provision, not § 502(a)'s, and this decision concerns only that determination. (*See* Bankr. Dkt. No. 2168, at 5–6). So to the extent the Committee argues that § 1109(b) includes some parties that § 502(a) does not, *contra In re 1300 Desert Willow Rd., LLC*, No. 25-11375, 2026 WL 896104, at *1, 2026 Bankr. LEXIS 801, at *2–3 (Bankr. S.D.N.Y. Apr. 1, 2026); *In re Yellow Corp.*, 670 B.R. 397, 410 (Bankr. D. Del. 2025), the bankruptcy court may address that issue on remand.

insured claims would expose it "to millions of dollars in fraudulent tort claims." *Id.* at 275–76, 281–82. Applying the "insurance neutrality" doctrine, however, the bankruptcy court, district court, and court of appeals all concluded that the insurer was not a party in interest under § 1109(b). *Id.* at 276–77. Under that doctrine, courts inquired whether "the plan increase[d] the insurer's pre-petition obligations or impair[ed] the insurer's pre-petition policy rights." *Id.* at 283 (citation modified). Because the plan in *Truck* neither increased the insurer's pre-petition obligations nor impaired its pre-petition policy rights, the lower courts concluded, it was insurance neutral, and the insurer lacked standing under § 1109(b). *Id.* at 276–77.

The Supreme Court reversed. Examining "Section 1109(b)'s text, context, and history," the Court concluded that "an insurer . . . with financial responsibility for a bankruptcy claim is a 'party in interest' because it may be directly and adversely affected by the reorganization plan." *Id.* at 277. In doing so, the Court observed that this provision's "capacious" text reflected the "general theory that anyone holding a direct financial stake in the outcome of the case" should have a say. *See id.* at 277–78 (citation modified). The plain meaning of the term "party in interest," the Court continued, "refers to entities that are potentially concerned with or affected by a proceeding." *Id.* at 278. Additionally, § 1109(b)'s historical context revealed "consistent[]" congressional action to allow "greater participation in reorganization proceedings," which "promotes a fair and equitable reorganization." *See id.* at 279–80. "In short, § 1109(b) was designed to serve the policies of inclusion underlying the chapter 11 process." *See id.* at 280–81 (citation modified).

Under these principles, the *Truck* insurer was a party in interest. *Id.* at 281. "Bankruptcy reorganization proceedings," the Supreme Court explained, "can affect an insurer's interests in myriad ways"—including by producing a plan that, while purporting to maintain coverage

defenses, "allow[s] claims at amounts far above their actual value and out of line with the claimants' injuries or the payment of claims for which little to no proof of injury is required." *Id.* (citation modified). Importantly, "[t]he § 1109(b) inquiry asks whether the reorganization proceedings *might* affect a prospective party, not how a particular reorganization plan actually affects that party." *Id.* at 283 (emphasis added). The Court rejected the insurance neutrality doctrine as "too limited in scope," explaining that focusing on "the insurer's prepetition obligations and policy rights . . . wrongly ignores all the other ways in which bankruptcy proceedings and reorganization plans can alter and impose obligations on insurers." *Id.* "Whether and how [a] particular proposed [plan] affects [the insurer's] obligations and exposure is not the question," the Court explained; the fact that an insurer's "financial exposure *may* be directly and adversely affected by a plan is sufficient to give [it] a right to voice its objections in reorganization proceedings." *Id.* at 283–84 (emphasis added). Ultimately, "[w]here a proposed plan 'allows a party to put its hands into other people's pockets, the ones with the pockets are entitled to be fully heard and to have their legitimate objections addressed.'" *Id.* at 282 (quoting *Global Indus. Techs.*, 645 F.3d at 204).

**2. Other Relevant Caselaw**

As one bankruptcy court has recognized, the § 1109(b) inquiry following *Truck* "is fundamentally the same one" many courts "faced before." *See In re AIO US, Inc.*, 672 B.R. 261, 265 (Bankr. D. Del. 2025). Accordingly, further pre- and post-*Truck* caselaw is relevant to determining whether Hartford is a party in interest.

Even before *Truck*, courts "recognized that a liability insurer is a 'party in interest' where the debtor's insurer is responsible to pay claims brought against the debtor." *In re Heating Oil Partners*, No. 3:08-CV-1976, 2009 WL 5110838, at *5, 2009 U.S. Dist. LEXIS 117871, at *16 (D. Conn. Dec. 17, 2009) (citing *In re Standard Insulations, Inc.*, 138 B.R. 947, 950 (Bankr.

W.D. Mo. 1992)); *see also In re Heating Oil Partners, LP*, 422 F. App'x 15, 17 (2d Cir. 2011) (citing *Standard Insulations* approvingly in conducting insurer § 1109(b) party in interest analysis); *In re Johns-Manville Corp.*, 31 B.R. 965, 971–72 (S.D.N.Y. 1983). One out-of-circuit bankruptcy court, drawing on Third and Seventh Circuit authority, concluded the same for an insurer who had a contractual duty to defend the debtor, even where the insurer's "obligation to indemnify" the debtor was "uncertain[]." *See In re Black, Davis & Shue Agency, Inc.*, 460 B.R. 407, 413–15 & n.6 (Bankr. M.D. Pa. 2011); *see also In re Surfside Resort & Suites, Inc.*, 344 B.R. 179, 188 (Bankr. M.D. Fla. 2006) ("Some courts have found that insurers are parties in interest with standing to participate in the Chapter 11 process . . . because 'parties with potential responsibility to pay claims against debtors regularly have standing to participate in bankruptcy cases.'" (quoting *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 158 (D.N.J. 2005))).

Other pre-*Truck* cases illustrate when a party's position "is too remote to entitle [it] to intervene" using § 1109(b). *See In re C.P. Hall Co.*, 750 F.3d 659, 661 (7th Cir. 2014); *cf. Refco*, 505 F.3d at 117 (Appellants' argument "reads into § 1109(b) a degree of separation from the primary parties in a bankruptcy proceeding that we are unwilling to countenance."). In *Refco*, for example, a group of investors were not parties in interest under § 1109(b) because they sought only to assert the rights of an estate's creditor in which they had invested funds. *See id.* at 117–19. Although the creditor entity's directors may well have "violated their fiduciary duties by entering a settlement that was not in the [investors'] best interests," that "issue [was] not for the bankruptcy court." *See id.* at 118. Too lenient a standard, the Second Circuit warned, would risk "over-burden[ing] the reorganization process by allowing numerous parties to interject

themselves into the case on every issue." *Id.* at 118–19 (quoting *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 850 (Bankr. S.D.N.Y. 1989)).

Similarly, in *Teligent*, a law firm that previously represented an estate's debtor "had too remote an interest in [a] settlement agreement to have been considered a party in interest" entitled to be "heard before the bankruptcy court on the agreement's approval." *Teligent*, 640 F.3d at 61. The law firm, the Second Circuit explained, "had no financial stake in the outcome of the bankruptcy case"—it was not a creditor, "merely a potential debtor of [the estate's] debtor." *Id.* Nor did the settlement require the firm "to pay any money to the [debtor's] estate or to" the debtor's debtor. *Id.* As a result, the firm "lacked standing to challenge the settlement agreement . . . before the bankruptcy court." *Id.*

Finally, in *C.P. Hall*, an excess insurer of the debtor's liabilities sought to object to the debtor's settlement with another of its insurers, worried that the agreement would increase "the likelihood of [the excess insurer] having to honor its secondary-coverage obligation." *C.P. Hall*, 750 F.3d at 660. The excess insurer was not a party in interest, the Seventh Circuit concluded, as its interest amounted only to a claim that the debtor "received so little in the settlement that it [was] bound to come after [the excess insurer] for the difference." *See id.* at 661. And that interest was "too remote." *See id.*

Post-*Truck* courts continue to recognize that party in interest standing extends to "anyone holding a direct financial stake in the outcome of the case." *See In re Richardson Foods, Inc.*, 667 B.R. 500, 522 (Bankr. S.D.N.Y. 2025) (quoting *Truck*, 602 U.S. at 277–78); *see also In re Stream TV Networks, Inc.*, 675 B.R. 1, 5 n.2 (Bankr. E.D. Pa. 2025) (same); *In re Smidt*, No. BAP CC-24-1071-FGL, 2025 WL 863113, at *6, 2025 Bankr. LEXIS 663, at *16 (B.A.P. 9th Cir. Mar. 19, 2025) (similar); *cf. Teligent*, 640 F.3d at 60. And others, like Hartford, have found

standing under *Truck* under circumstances in which a party's financial interest "might" be adversely affected. *See Roman Cath. Diocese of Syracuse*, 665 B.R. at 874–75 (quoting *Truck*, 602 U.S. at 283); *see also In re BYJU's Alpha, Inc.*, No. 24-10140, 2024 WL 3738150, at *4 n. 14, 2024 Bankr. LEXIS 1851, at *11 n.14 (Bankr. D. Del. Aug. 8, 2024); *In re Martin*, No. 5:24-BK-01277, 2026 WL 1174729, at *4, 2026 Bankr. LEXIS 1076, at *10 (Bankr. M.D. Pa. Apr. 29, 2026); *cf. In re Steward*, 668 B.R. 203, 211 (Bankr. N.D. Ill. 2025); *1300 Desert Willow Rd.*, No. 25-11375, 2026 WL 896104, at *1, 2026 Bankr. LEXIS 801, at *3 (observing that *Truck* "liberalized the rules governing standing in bankruptcy cases"). At least two bankruptcy courts, however, have cited with approval to Judge Littlefield's reading of *Truck* to require that insurers have been either adjudicated responsible for claims or formally accepted responsibility for claims to possess § 1109(b) party in interest standing. *See In re Hopeman Bros., Inc.*, No. 24-32428, 2025 WL 3688940, at *9, 2025 Bankr. LEXIS 3324, at *25–30 (Bankr. E.D. Va. Oct. 31, 2025); *see also In re Roman Cath. Church of Archdiocese of New Orleans*, No. 20-10846, 2025 WL 3545484, at *1–2, 2025 Bankr. LEXIS 3183, at *4–8 (Bankr. E.D. La. Dec. 9, 2025).

**3. Hartford is a Party in Interest**

To begin, the parties here advance competing interpretations of *Truck*. Notably, they disagree whether the insurer there, unlike Hartford, had in fact conceded liability for the relevant claims under its policies. But as the Committee notes, the Supreme Court granted certiorari "to decide whether an insurer *with financial responsibility for a bankruptcy claim* is a 'party in interest' under § 1109(b)." *Truck*, 602 U.S. at 277 (emphasis added). And in its decision the Supreme Court repeatedly referred to the insurer there as one "with financial responsibility." *See id.* at 271–72, 277, 281–82, 284–85; *see also id.* at 284 ("Insurers *such as Truck* with financial responsibility for claims are not peripheral parties." (emphasis added)). While the decision did not discuss whether the insurer's "financial responsibility" was based on an adjudication or

acknowledgement of liability, given the question presented and the language in *Truck*, the insurer there clearly bore "financial responsibility" for claims, even if it retained the right to pursue some coverage defenses, as Hartford asserts.

That conclusion, however, is not dispositive. The Supreme Court emphasized in *Truck* that courts must conduct the party in interest inquiry "on a case-by-case basis." *Id.* at 277; *Teligent*, 640 F.3d at 60. So, guided by the above principles, the bankruptcy court was tasked with evaluating whether Hartford "has a sufficient stake in the reorganization proceedings" to object to the claims pursuant to § 502(a). *See Truck*, 602 U.S. at 277.

On the facts of this case, the bankruptcy court read *Truck* too narrowly and erred in concluding that it requires Hartford to definitively demonstrate an actual financial responsibility for the claims to have a sufficient stake. Here, the Diocese maintains that Hartford bears financial responsibility for these obligations under the policies—it has tendered the claims to Hartford for coverage and commenced an adversary proceeding arguing as much. While the adversary proceeding remains pending, and Hartford has raised affirmative defenses to coverage in that proceeding, Hartford has made indemnity payments in abuse-related settlements and agreed to defend many such lawsuits pre- and post-petition. Hartford explains that unless someone objects to the claims, the claims will be allowed, making them the Diocese's legal obligations. *See* § 502(a). Thus, Hartford's "financial exposure may be directly and adversely affected by" claims that are allowed, giving it the "right to voice its objections in [this portion of] the reorganization proceedings." *See Truck*, 602 U.S. at 284.

This conclusion comports with the "plain meaning" of the term "party in interest" as defined by the Supreme Court. *See id.* at 278. Hartford is a party "potentially concerned with or affected by" the question of whether the claims will be allowed. *See id. Truck* explained the

"myriad ways" in which "[b]ankrutpcy reorganization proceedings can affect an insurer's interests." *See id.* at 281–82. These proceedings are no different. Hartford says that some claims fail to meet the federal pleading standard, and therefore may prove to be invalid or misvalued. Without any objections, however, the Diocese will become liable for even those types of claims. And if—as the Diocese maintains—the policies cover the relevant claims, so too will Hartford. Indeed, as Hartford argues, it appears to have a strong incentive to object.[7]

To be sure, although the Diocese asserts that Hartford will be financially responsible for these claims, Hartford has not conceded liability. And as noted above, the *Truck* court purported only to address the party in interest standing of insurers "with financial responsibility for a bankruptcy claim," *id.* at 277; other pre-*Truck* cases similarly addressed facts involving insurers "responsible to pay claims brought against the debtor," *see Heating Oil Partners*, 2009 WL 5110838, at *5, 2009 U.S. Dist. LEXIS 117871, at *16. But at least one pre-*Truck* bankruptcy court observed that this line of cases applied to an insurer who had a duty to defend even where the insurer's "obligation to indemnify" was "uncertain[]." *Black, Davis & Shue Agency*, 460 B.R. at 415 n.6.

In any event, *Truck* unequivocally instructs that "[t]he § 1109(b) inquiry asks whether the reorganization proceedings *might* affect a prospective party." *Truck*, 602 U.S. at 283 (emphasis added); *see also id.* at 283–84 ("The fact that [an insurer's] financial exposure *may be* directly and adversely affected by a plan is sufficient to give [it] a right to voice its objections in reorganization proceedings." (emphasis added)). Several bankruptcy courts interpreting *Truck*

[7] The Diocese also would appear to have an incentive to object. But as Hartford noted at oral argument, the Diocese's economic incentives have shifted following its agreement on settlement terms with the Committee that will lead to an agreed-upon reorganization plan.

have confirmed this reading.[8] Indeed, one explained that, in certain cases, there may exist circumstances in which liability need not "be acknowledged or adjudicated before the teachings of *Truck* apply." *See Roman Cath. Diocese of Syracuse*, 665 B.R. at 875.

Attempting to distinguish *Diocese of Syracuse*, the Committee—like the bankruptcy court below—points out that no reorganization plan has yet been proposed. While true, that fact is not dispositive under the circumstances. "Whether and how the particular proposed [plan will affect Hartford's] obligations and exposure is not the question." *Truck*, 602 U.S. at 683–84. As the Supreme Court explained, "§ 1109(b) cannot depend on a plan-specific rule—that standard would be unusable for the Code provisions empowering a party in interest to request acts unrelated to a specific plan or that occur before a plan is confirmed or even proposed." *Id.* at 283 (citation modified). Here, whether the claims are allowed or disallowed will impact a proposed plan or potential settlement.

As in *Truck*, Hartford gets "neither a vote nor a veto," only "a voice in the proceedings." *Id.* at 272, 284. Its participation reflects "the policies of inclusion underlying the [C]hapter 11 process," which "§ 1109(b) was designed to serve." *Id.* at 280–81 (citation modified). After all, the Supreme Court explained, "[b]road participation promotes a fair and equitable reorganization process." *Id.* at 280. True, courts must be mindful not to "over-burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue." *Refco*, 505 F.3d at 118 (quoting *Ionosphere*, 101 B.R. at 850); *see Truck*, 602 U.S. at 284. But unlike the parties in the Second and Seventh Circuit decisions cited above, Hartford's interest is not so

---

[8] Although two courts have cited Judge Littlefield's reasoning with approval, both nevertheless addressed the merits of the respective objections. *See Archdiocese of New Orleans*, No. 20-10846, 2025 WL 3545484, at *1–2, 2025 Bankr. LEXIS 3183, at *4–8; *Hopeman Bros.*, 2025 WL 3688940, at *9, 2025 Bankr. LEXIS 3324, at *25–30.

remote that its "degree of separation from the primary parties" is too great "to countenance."[9] *See Refco*, 505 F.3d at 117 (group of estate's creditor's investors); *Teligent*, 640 F.3d at 61 (potential debtor of estate's debtor); *C.P. Hall*, 750 F.3d at 660 (excess insurer concerned insured's settlement made insured more likely to seek secondary coverage). As noted above, Hartford has already "made indemnity payments in connection with multiple" abuse-related settlements and participated in the defense of approximately 115 such lawsuits pre-petition, albeit "subject to a . . . reservation of rights." (Bankr. Dkt. No. 2118, ¶¶ 4–5). Hartford has also participated in the defense of several post-petition abuse-related lawsuits. (*See id.* ¶ 5). So its "financial exposure may be directly and adversely affected" by claims that are allowed, and as the facts currently stand, it is a party in interest under § 1109(b). *See Truck*, 602 U.S. at 284.

**C. Additional Bankruptcy Standing Requirements and Equitable Discretion**

Having reached a different § 1109(b) conclusion, the bankruptcy court declined to address the parties' arguments concerning constitutional and prudential standing, as well as its equitable discretion to exclude Hartford's participation. (*See* Bankr. Dkt. No. 2168, at 15–16). That was permissible. *See In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155–56 (2d Cir. 2015) ("[U]nder certain circumstances, questions of 'statutory standing may properly be treated before Article III standing.'" (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999))); *cf. Teligent*, 640 F.3d at 60 n.3 (declining to "reach the constitutional [and] prudential questions" in light of § 1109(b) holding). This Court declines to address these additional issues now, however, leaving them for the bankruptcy court to address in the first

[9] Because a party's "stake in the reorganization proceedings" must be determined "on a case-by-case basis," the Court's holding is limited. *See Truck*, 602 U.S. at 277; *Teligent*, 640 F.3d at 60. It does not foreclose the possibility that, in other factual circumstances, an insurer's refusal to acknowledge liability may prove fatal to its party in interest claim, depending on how the insurer seeks to intervene in the reorganization proceedings.

instance on remand. Similarly, the bankruptcy court may also address in the first instance the Committee's arguments concerning equitable discretion. (*See* Bankr. Dkt. No. 2168, at 16).

## V. CONCLUSION

For the reasons given above, on these facts, the bankruptcy court erred in concluding that *Truck* requires Hartford to show definitive financial responsibility to have § 1109(b) standing, and so it is hereby

**ORDERED** that Hartford's motion for leave to appeal (Dkt. No. 2) is **DENIED** as unnecessary; and it is further

**ORDERED** that the September 3, 2025 order of the United States Bankruptcy Court for the Northern District of New York (Bankr. Dkt. No. 2168) is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision.

**IT IS SO ORDERED.**

Dated: September 29, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge